The Constitution's separation of powers vests legislative, executive, and judicial power in the respective branches of the federal government. This basic structure is meant to protect liberty through various means that ensure government accountability to the people. The Horse Racing, Integrity, and Safety Act, even after it was amended by Congress, still violates this basic design. The authority of private corporations wields federal power over private citizens in violation of both the private non-delegation doctrine and the Employment Clause. My clients are irreparably harmed continuously by these violations of the Constitution and it would be in the public interest and equitable for the court to grant a preliminary injunction in this case. First HISA violates the private non-delegation doctrine. The private non-delegation doctrine stands for a simple principle that nobody outside of the government could wield the government's power. Yet HISA, the authority under HISA has the sweeping power to write rules and enforce those rules. The Act only gives them broad policy outlines that cover everything of what drugs may be administered to a horse, to what types of shoes a horse may wear during a race, and how those rules will be enforced. After writing those regulations, they are submitted to the FTC who must approve them if they are consistent with the Act. But the FTC cannot second guess the details or the substance of the rules even if it disagrees with the authority. It must enact the rule and that violates the private non-delegation doctrine. Now the FTC will take issue with that assertion and they said in fact they have on occasion not approved rules. So they have not approved rules based on consistency or not based on consistency. At least that's my understanding. So they have basically said that, you know, if you don't apply with the broad outlines of the statute, then we're going to reject it. But that has nothing to do with the policy choices. Now since the Sixth Circuit rule... Isn't that just saying, well, we're not going to allow you to enact a rule that's against the statute? I mean, isn't that sort of consistent with any rulemaking? That the rule in theory is supposed to be consistent with whatever the statute requires? No, I don't think that's right, Your Honor, because... So when, at least in like the FINRA area. So when a private association sends the rule to the agency, it can review the policy choices within that rule. Here under HISA, they don't review the policy choices, at least under the statute. The consistency review just makes them check the boxes. So the authority is still allowed to fill in the details of the statute, right? So the statute gives broad outlines about what the authority needs to consider. But when it comes to filling in the details, the FTC has no power to second guess that. So for example, the statute allows the authority to draw a list of drugs that will be banned. Right? As long as they bring a list to the FTC, that's it. That's consistent. Now, what drugs are banned and how much of the drugs are banned, the FTC has no control over that. That's the authority's policy choice, and the FTC can't second guess that. Let me ask you another question, and I'm going to ask the FTC to respond to this too. You brought a challenge in the Sixth Circuit, and they rejected it. Fifth Circuit has the same case under submission since, I think, October, and may very well decide before we do. Let's assume they also reject the challenge. What is the race, judicata, or policy that governs going from one circuit to the next circuit to the next circuit until you find one that agrees with you and then issues a nationwide injunction? Well, my clients aren't involved in either of those cases. Well, I mean, I'll grant you that you could find a separate set of plaintiffs in every circuit. You won't have as much trouble finding 11 different sets of plaintiffs. So is there anything to prevent you, okay, if you lose here, you go to the Fourth Circuit. You lose there, you go to the Ninth Circuit. Is there anything, either from a legal or policy standpoint, that we should be concerned about? And, you know, I grant you, you'll get a different set of plaintiffs, and you'll repackage the take out one or two, but how should we look at that if you've already been to two circuits and lost? Why shouldn't we just say, go to the Supreme Court and let them figure it out? Well, I will say, if the Fifth Circuit rules against it and the Sixth Circuit rules against it and the Supreme Court, which has the Sixth Circuit cases before it, rejects it, you know, those precedents will be, you know, more weighty in any further case. But we only have the Sixth Circuit decision here. The Fifth Circuit hasn't ruled, and we believe our clients who are within the jurisdiction of this court have the right to come and petition the court. So, you know, we believe an independent review is appropriate. And I would say that, you know, people exercising their constitutional rights to come into court is a weighty policy, you know, decision on the other side. So where, in your opinion, did Judge Sutton go wrong? So, Judge Sutton, we believe he went wrong in over-reading the amendment to HISA. So the text of the amendment says, the commission, by rule, in accordance with the APA, may abrogate, add to, or modify the rules of the authority promulgated in accordance with this act as the commission finds necessary and appropriate to ensure, you know, the rules of the authority may go to the purposes of HISA. That only allows after the fact amendment. It didn't change the consistency review under 3053C, which still requires that the FTC only review the authority's rules for that consistency. The Fifth Circuit said that wasn't good enough, that the consistency review didn't give the policy choices of the authority. And under our view, once that happens, once that rule is approved, you have a private party that has issued a regulation that binds other private parties. That's the private non-delegation violation. So Judge Sutton, he read into that that they could issue rules anytime they want, and that they could change the consistency review. Or they could change the provision of the act that allows the authority to go into federal court and sue for an injunction. We just don't think that's right. We don't think you can get that from the plain text of that amendment. It only gives after the fact review. So I'll turn briefly to the appointments clause challenge, Your Honor. HISA gives the authority broad power to execute the law. And those powers are in HISA. So it charges the authority with writing rules that are going to regulate society over thoroughbred racing. It gives them the power to enforce them. It can issue subpoenas. It can do investigations, basically warrantless searches. So the authority has broad, ongoing power under HISA. We think that requires them to be appointed at least as inferior officers under Buckley v. Alejo, Celia Law. I mean, the executive powers they wield are just enormous. And government accountability requires that somebody in government take responsibility for that. So we believe this also violates the appointments clause. And the harm to my clients is definitely irreparable. Whenever the authority is funded by horsemen that are in the Iowa Vanellivet Association. So every year they get issued an assessment, and they have to take money that would be available for winners of races. And I think that's textbook irreparable harm. Plus, if this court finds that we're likely to succeed on the merits, I mean, the irreparable harm from being subject to an unconstitutional agency, we think that's clear. And then the public interest, I would paraphrase the Free Enterprise Fund. You know, they basically said, you know, you shouldn't uphold the structure of the Constitution because the accounting practices that have been going on, you know, it was dangerous to America. And the chief judge wrote that, you know, there's always going to be something that's necessary. But, you know, if we just allow the structural separation of powers to go unenforced, then that would be far worse. Aren't your private non-delegation argument and your appointments clause argument mutually exclusive? We don't think so, Your Honor, because, you know, they're arguing that even though, at least this is what we think they're arguing, that they have sufficient oversight of the authority. So, you know, they're controlling them in some aspect. But they can still wield the executive power. So, you know, under our- The authority's members are officers of the United States, aren't they no longer a private entity? Yes, that's true, Your Honor. So- And aren't they mutually exclusive? Yeah. You know, I mean, there are alternative arguments in the sense that if we went on the private non-delegation doctrine- I understand. I'm not saying you can't do that. It's perfectly fine. I just want to make sure that you're not trying to assert them at the same time. Are you arguing that you only have to show a fair chance of prevailing as opposed to a likelihood of success? I couldn't understand the argument about why this wasn't a statute that was duly enacted through the normal legislative process that would require a showing of likelihood of success. Yeah, I mean, our point with that was it was the private authority that's issuing the rules. No, but the statute. You're attacking the statute that creates that. We are officially attacking the statute. So, you know, we think we win under either standard. But our point was that there is a private entity that's not accountable to the people that's issuing these rules and that that cannot have the full force of the democratic process. Can we go back for a second to your point about 3053E? I thought you were saying something to the effect that because that's after the fact authority it's inadequate. Can you elaborate on that again? So we think that- What do you mean by after the fact? Do you mean after the rules are promulgated by the- After the authority's rules take binding effect, that is when the amendment allows the FTC to come in and to abrogate, modify, or add to those existing rules. We think the teaching of Adkins is that for a private entity to be subordinate to an agency, they have to have that same control at the proposed rule stage. What makes you think that the commission is unable to exercise authority under 3053E before the rules go into effect? The text of the statute, or the text of the amendment, your honor. It says- The commission may abrogate- By rule, in accordance with the- May abrogate, add to, modify the rules of the authority promulgated in accordance with this act. That's after the fact. I mean, after they've been promulgated, after they've been approved. And Congress didn't fix anything in section C. The consistency review stays the same. It was not altered. If there are no further questions- You think the commission could instantaneously abrogate or modify a rule the moment it is quote unquote promulgated? No, they could not. The commission couldn't. Why not? They have 60 days to approve the rule under the consistency review. So then they would have to go through notice and comment rulemaking after the rule is approved, which can take years. The whole time- I see. Your point is they can only abrogate by rule, which requires a process- Exactly. And that can take quite a bit of time. And that whole time, you have a private party that has bound other private parties. We think that is a clear public non-delegation violation, or private non-delegation violation. Is the authority made up solely of people in the horse industry? No. So the board is, I believe, five disinterested board members, and then four board members are from the horse racing industry. If there are no more questions, I'll reserve the rein in my time. Very well. Thank you for your argument. Ms. Dixon, we'll hear from you. Good morning, and may it please the court. Courtney Dixon for the Federal Trade Commission. As your Honor's questions have indicated this morning, the Sixth Circuit considered a materially identical private non-delegation challenge to the Act. Last year, and Chief Judge Sutton writing for a unanimous court, held that the Act, as amended, gives the FTC the final say over administration of the Act. The Act places the private authority in a subordinate position to the public agency in satisfaction of the private non-delegation doctrine. Well, maybe the final say, but what I'm curious about is, let's say the authority, which is close to half people in the industry, determines that they don't want to have any regulation related to the drugging of horses, and the FTC, on the other hand, thinks there should be. What allows the FTC to initiate, if anything, to initiate a rule in that regard? So a few potential responses to that. Could you speak into the microphone, please? Certainly, Your Honor. Sorry, I'm a little bit shorter. You can adjust the podium. Thank you. Can you hear me now? A few potential responses to that. I think most directly, I would go to the FTC's general rulemaking authority under the amended statute. Now, obviously- So where is it? I know Judge Sutton referred to that, and that's kind of what he hung his hat on, but I'm having a hard time seeing that. So I mean, I think it's also important to take a step back and consider how we got here, because I think a lot of Judge Sutton opinion was building on the Fifth Circuit's decision and the context that it happened. The Fifth Circuit had looked at the original statute, and it said, OK, this statute was modeled on the self-regulatory scheme that exists in the securities industry, in which the SEC supervises private self-regulatory organizations. The Fifth Circuit said, you know, in that system, the SEC operates in- has supervision over the self-regulatory organizations that operate in aid of the SEC. The Fifth Circuit recognized that for both the SEC scheme and the FTC scheme, both the SEC and the FTC look at the consistency at the proposed rules. But the Fifth Circuit found a key difference. In the SEC scheme, the SEC has the general rulemaking authority to abrogate, add to, and modify. OK. But that requires that the authority act first in any particular area of regulation. What I've posited to you is the authority says, we don't want to do that. Right. I think I- And the FTC says, well, I think we really need to regulate the drugging of horses. Right. So again, I think- And so if you look at the language, it's- first off, they can- they have to approve anything that's consistent. I don't see anything that gives them the authority to init- them being the FTC, the authority to initiate. And then with the amendment, they can abrogate, add to, or modify the rules of the authority. Right. So in referring to the rules of the authority- So where does the FTC get the authority to issue its own rules, the general rulemaking authority that Judge Sutton seemed to find? I'm having a hard time finding that. Right. So it refers to the rules of the authority. I think that's best understood as the body of rules. And obviously, the statute includes not only the word modify, but add to, abrogate entirely. I think those words, again, are under- you can add to the body of the authority's rules. That's to initiate new rules, not just to modify ones. Okay. So wait a minute. Let me play that out. You think that if the authority issued a rule about how farriers work, horseshoes, that they could add to that a drug requirement? Well, I think you could add to the body of the authority's rules. It says the rules of the authority. It doesn't say one particular rules of the authority. And obviously, add to appears in the statute alongside the word modify. I'll also note that, you know, I mean, at the time that Congress amended this statute, the authority had already promulgated or proposed rules that the commission had approved with respect to some of them. There already was a body of rules at the time Congress amended this statute. And again, to look at the context of the amendment, as I was indicating, the Fifth Circuit found that, okay, I understand that Congress had modeled this on the SEC scheme, this kind of longstanding scheme in the securities industry that's understood as, you know, the paradigmatic example of a private entity operating in aid of a public agency to carry out a federal scheme. But the Fifth Circuit found that this lack of general- But the SEC can initiate its own rules. The authority of the SEC, this general rulemaking authority of the SEC, is materially identical to the FTC's authority under the amended statute. The SEC's, it says the SEC may by rule abrogate, add to, delete from the rules of the self-regulatory regulations. So you think add to means they could just come up with a new rule that wasn't even part of what the authority did? Yes, Your Honor. And they can just say, we want to add a whole new section of the rules regarding drugs. Yes, Your Honor. And that would be authorized under the amendment? Yes. And to be clear, the FTC has exercised its general rulemaking authority, for example, to promulgate a rule saying that the authority, or sorry, the authority has to submit its proposed budget to the FTC and that the FTC has a, gets to review that under certain standards that the FTC has promulgated. And that goes back to the general rulemaking provision. It says abrogate, add to, modify the rules of the authority to ensure the fair administration of the authority, to conform the rules of the authority to the requirements of the statute or otherwise in furtherance of the purposes of the statute. So the FTC said, look, to ensure the fair administration of the authority, to ensure that the statutes are being carried out in the way that the FTC sees fit, that it promulgated a rule to say that the authority has to submit its proposed budget under certain procedures and the FTC has a role in reviewing that. What do you have to say about this timing issue that was raised? First of all, there is no, I mean, there's no timing gap. So plaintiffs have referred to a provision of the statute that says the FTC has 60 days. That's only after the proposed rule has been published for public notice and comment. Then kind of there's like this 60 day window. There's no time provision in the statute. No, no. I thought the point was that once the rule goes into effect, because it's consistent with the statute, if the commission wants to abrogate it, it must go through its own rulemaking process and there would be a lag time during which the initial rule is in effect. Right. That's what I was speaking to. I'm sorry if I was being unclear. I did not understand that. So when the authority proposes a rule, you know, it submits it to the commission. There's no time period after which the FTC is in receipt of a proposed rule from the authority by which the FTC has to put that out in the Federal Register for public notice and comment. It could take the authority's proposal, look at it, consider it, say, you know, we have some questions. It could draft its own proposal, put them both out for public notice and comment at the same time. I see. And also, Judge Sutton, again, considered this very question in his statute, I'm sorry, in his decision. He, again, looked at the general rulemaking authority and said also, you know, if the FTC wanted, it could promulgate a rule to delay the effective date of an authority rule to give it sufficient time. So again, what Judge Sutton was recognizing, again, that Congress had, you know, gone back to the drawing board explicitly in response to the Fifth Circuit decision, had given the authority the Fifth Circuit said that it critically lacked. And in light of this amendment, the statute creates a clear hierarchy and gives the FTC the chance at every step to ensure that the statute is being carried out in accordance with how the FTC sees fit. Who decides when the proposed rule is published in the Register? You think the Commission decides that? Yes, Your Honor. There's no provision in the statute by which there's a timeline on when the FTC has to put it out for public notice and comment. It does say proposals have to be put out for public notice and comment, but that doesn't have a timeline in the statute. Let me ask you, you've mentioned several times this is modeled after the SEC. Are you familiar with the case that's currently before the Supreme Court that attacks sort of the underpinnings of the SEC regulatory scheme, that Jarsky case? Somewhat, Your Honor. Do you think, depending on how the Supreme Court responds, we may be looking at a whole different case in a couple of weeks? I don't think so, Your Honor. I mean, my understanding is that's not addressing kind of the self-regulatory kind of system on which this statute was enacted. So no, I don't think that there's anything in that case that would bear on this case. If there aren't any further questions, I'm happy to allow my friend from the authority to have his time. Thanks very much. Thank you. May it please the Court, Prateek Shah for the private authority defendants. Maybe I'll start with what was the key question that both Judge Grunder and Chief Judge Colleton were focusing on. It's the linchpin of their argument, right? In fact, they argue that the FTC, even under the amendment, doesn't have the power to initiate rules. I think that reading conflicts with both the plain text. But if there's any doubt about that, the doctrine of constitutional avoidance clearly cuts in favor of the interpretation that both the unanimous Sixth Circuit and Judge Hendricks in Texas reach. So just starting with the text, which I know we've already talked about here, but just to put a fine point on it, it says the commission may abrogate, add to, or modify the rules of the authority. If, in fact, it means they can't initiate rulemaking, it reads the word modify out of the statute, right? You have to give each of these words independent context. Abrogate clearly contemplates a prior rule. Modify. Do you agree that you would have, if the FTC can't initiate, you have an uphill battle? Your Honor, I think it would be a closer call if they couldn't initiate. I don't think it's necessarily a problem. As we know, the SEC FINRA statute, Maloney Act, which, by the way, this was cut and paste from that. It's identical language to the SEC. That's been affirmed by numerous courts of appeals over and over because it still gives the final word to the agency. What I'm saying to you is, even if you wanted to go further, right? If you were going to depart from the Sixth Circuit, Judge Hendricks, all of the Maloney Act cases from the Second, Third, Ninth Circuit, even if you were going to depart from that and say they have to have the first word as well, this amendment empowers them to have the first word because it says abrogate, clearly contemplating a prior rule, modify, clearly contemplating a prior rule, but add to, not contemplating a specific prior rule. And remember, by the time the amendment had been passed, there was a whole body of rules. I'm having a hard time seeing that because it's add to the rule of the authority. The rules of the authority. By the time this amendment happened, Judge Grinder, this was already a year into the statute. There was already a full racetrack safety rule. There was already a full registration rule. The ADMC rules were already pending. There was an entire body of rules of the authority. Okay, so just so I understand you, you think that add to means that if the authority says we don't want to regulate drugs and horses and the FTC says we think you should and they write a rule that adds that in, that that is adding to the so-called body of the rules. It is adding to the body of the rules. That's the plain text reading of it. And just to take it out of the hypothetical, this has happened. The authority did not promulgate any rules about its budget. And on page 13 of our brief, we cite the budget rule. The FTC on its own initiated a rulemaking on the budget that's currently on the books. Nobody has ever challenged that as beyond the FTC's authority. Everyone is complying with that. That is exactly your hypothetical. It's actually happened. And in a facial challenge, right, I mean, they're making a facial challenge. They have to show the statute can't be read. That's sort of a governing procedural type thing. Has it ever happened in a substantive area? Well, no, because by the time, Your Honor, that this amendment happened, there was already a full body of racetrack safety, enforcement, registration. All of those were already on the books by the time Congress did this amendment, right? Well after the statute was enacted. Now, if I haven't convinced you, right, under the doctrine of constitutional avoidance, as long as there is a plausible reading of the statute that avoids the constitutional concern, this court has to adopt it. They are turning constitutional avoidance on its head. They're saying, read this statute in an incredibly narrow way such that FTC can't initiate rulemakings in contradiction of the reading that the unanimous Sixth Circuit did, in contradiction of the reading that Judge Hendricks did, in contradiction of the clear purpose that Senator McConnell told you in his amicus brief on behalf of the bipartisan sponsors of this bill. They specifically did this to empower the FTC to redress the Fifth Circuit's problem. It would be very odd for Congress to respond directly to a constitutional ruling from a federal court of appeals, fix it in the most direct way by copying and pasting a statute that has been upheld for 85 years from the Maloney Act, and then have a court say, no, we're going to read that statute very narrowly, what I would say in conflict with the plain text, but at least reasonably read to encompass initiating rulemaking. That's how every court that has construed this amendment, both under the Maloney Act and under this statute, has read it. Not a single court has adopted their narrow reading, which would create a constitutional concern, not eliminate it. And again, practice has borne that out in the time that we have seen it. Let me ask you this. If the FTC felt the commission was not fulfilling its responsibilities to promulgate rules along the lines of what Judge Grundy was talking about, what authority does the FTC have to remove commission members in place then? They do not have the power to remove members of the authority as the Fifth Circuit said. While they don't have that power, the power to abrogate the rules of the authority or to initiate their own is tantamount to that power, and that's why they said, and that's what the Fifth Circuit said. So you're right, Your Honor, they don't have, because it is a private entity, they don't have the power to remove those members. But I don't think that doesn't give them the final word, doesn't give them, as I explained to Judge Grundy, even the first word. And I think related to that, their argument about the time gap sort of rises and falls with this question, does the FTC actually have the power to initiate rules? Because if they have the power to initiate rules, as they've done, and as every court that's construed it does, then their timing gap argument falls away too, because nothing stops the FTC, as Ms. Dixon was explaining. And this has happened. The authorities proposed a rule, for example, it proposed the revised racetrack safety rules in September of 2023. The FTC didn't publish that for notice and comment until April. So during that, whatever that is, eight months, seven months span, nothing stops the FTC, if they have a policy disagreement with the rules from the authority, from putting out its own rule either before or concurrently with, and remember, the statute consistency review isn't just consistent with the act. The language of the statute says consistent with the act and the rules that have already been promulgated. And so what Chief Judge Sutton says in his opinion is, hey, look, once the FTC promulgates its own rule on a topic, then that forecloses the authority from departing from that rule, right? It says you have to be consistent with the act and the rules promulgated there under. And so this was a key part of Chief Judge Sutton's opinion. What it actually says is applicable rules approved by the commission. Yes, applicable rules approved by the commission. Which, with consistency review, seems to me to suggest rules of the authority approved by the commission, not the commission doing its own rules. Well, Your Honor, I think that language in the original statute was drafted pre-amendment, right? And so I think rules approved by the commission must subsume. I mean, even greater argument that it has to subsume the rules enacted by. Because if not, you could have the FTC modify, which everyone agrees it could modify a rule, and then suddenly the authority doesn't have to be consistent with that. Of course it has to be consistent with that. So I think even if there's some ambiguity there, again, this is a facial challenge. Constitutional avoidance says, why don't we read the statute to mitigate these constitutional concerns, not to create one and knock down a whole statute that Congress has twice enacted originally, and then responding precisely to constitutional concerns to try to solve them, and solve them in the exact way that the Maloney Act has been doing for 85 years, and that no court has questioned. I'm happy to address any of the other issues, public non-delegation, appointments clause, but otherwise, I think Judge Grunder, you're right, it's mutually exclusive. The one thing the parties agree on is that the authority is a private entity, and therefore it's outside the appointments clause. Very well. Thank you for your argument. Thank you. Mr. Garrison, we'll hear rebuttal. Thank you. Just a few points. Picking up what Judge Grunder said, the key here is the consistency review has not changed. It still allows a private authority to issue binding regulations. Regulations, filling in gaps, that is lawmaking under years of precedent. And they're trying to manipulate the text of the statute to give themselves plenary authority to completely rewrite everything Congress did. The authority writes the rules. The authority enforces it. They say, well, we have this broad roving power to go and change the statute. That's just not right. All you need to do is look at the text of the amendment, the commission by rule. I don't think they're saying that. I think they're saying that the add to language sort of means add to the body of rules from the authority, and therefore that's initial rulemaking authority. Or at a minimum, it's enough that constitutional avoidance ought to save it. How do you respond to those arguments? First, that would not change. I mean, you have to completely read parts of the amendment out of the statute to get to that. The commission by rule in accordance with the APA may abrogate, add to, modify the rules of the authority promulgated in accordance with this act. Provide that with consistency review, which did not change, the authority still brings rules to the FTC that they have to approve based on the consistency review. I mean, the only way to make sense of the statutory scheme on its face is that this is the after the fact review. And constitutional avoidance does not apply when the plain text of the statute gives you, I mean, it's just not susceptible of two different views. So constitutional avoidance doesn't come into this. Courts have always been clear about that. You don't apply constitutional avoidance when the text tells you what the statute says. And I mean, this was even their view. At page 37 of our brief, in one of their anti-doping rules, before the Sixth Circuit ruled, they said that that's their view, that the consistency hasn't changed, and that they can't review the policy of the authority's rules. The Fifth Circuit, I would like to point out, it did mention the fact that there was no after the fact review, and that was one big problem. But it also said, it also mentioned, as Judge Malloy talked about, that they can't remove any of the authority board members. They have no control in that situation. And it mentions proposed rules several times. The fact that they cannot change the proposed rules was a big constitutional problem for the Fifth Circuit. And it was what Adkins says made the COLE Act constitutional in that situation, because the proposed rules could be modified before they went into effect. So there was no private non-delegation problem, because the agency had the authority to change the policy, the prices in that case. So that's what we think it means to be subordinate. You have to not allow the private association to have policy review, to fill in the details that can't be second-guessed by the agency. What about this argument that this is the exact same language as the Maloney Act, and that's been upheld repeatedly? So the back-end review is the same. The problem is, is the consistency review under FINRA and SEC is different. I mean, under that FINRA review, the consistency review, unlike FCC's, authorizes the agency to make discretionary decisions. Before the rule can go into effect, they get to review it for appropriate and necessary. Throughout the act that FINRA enforces, there are certain checkpoints about policy that the SEC has to review. And the Fifth Circuit pointed that out. I mean, it's just a different consistency review. The SEC had the ability in that statute to alter the rules, where FCC does not have that ability here. Well, doesn't the amendment specifically give them that authority to alter the rules? To alter the rules after the fact. I'm talking about the consistency review, the upfront review. That, in our mind, is what causes the private non-delegation violation. What about the point that if the FTC saw a rule coming that it didn't like, it could just promulgate its own rule, get it on the books before the new rule comes along, and then declare it inconsistent? They would have to have a free-floating rule-making power to do that. We don't think that there's any concession. So then your argument depends on a reading of sub-E that says, add to doesn't allow them to create their own rule? Exactly. You have to take add to. Why is that? Go ahead. You have to take add to completely out of context. How is it out of context to say that add to the rules of the authority allows them to create their own rules? To modify rules of the authority promulgated in accordance with this act. What they can do is they can- No, I'm not referring to modify. I was referring to add to. Oh, yeah. So add to, I mean, once a rule has been into effect, then they can go through notice and comment rule-making. They can get rid of the rule by abrogating it. They can modify it by changing provisions, or they can add to it and add substance to the policy. So you want to read add to to mean the addition has to be tied to an existing rule? Exactly. I mean, it's- Why should we read it that way? The plain text of it says, modify the rules of the authority promulgated in accordance with this act. That, the amendment, if you review it in- I'm sorry, I'm over time. I'll just finish this up. Well, I understand. I think we have the point. Oh, yeah. Thank you for your- Thank you. Thank you to all counsel. Case is submitted. The court will file a decision in due course. Counsel are excused.